ROBERT WISNIEWSKI (RW-5308)
ROBERT WISNIEWSKI P.C.
225 Broadway, Suite 1020
New York, New York 10007
(212) 267-2101

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

------------------------------------------------------------------X

PATRICK VELARDE, on behalf of himself
and all others similarly situated,

                          Plaintiff,

         -against-

GW GJ, Inc., d/b/a THE SALON PROFESSIONAL
ACADEMY OF BUFFALO, MARGARET
GRENAUER, and PAUL GRENAUER,

                         Defendants.

------------------------------------------------------------------X

**Docket No.:** _____

**COLLECTIVE ACTION/
CLASS ACTION**

**JURY TRIAL DEMANDED**

## COMPLAINT

1.     Plaintiff Patrick Velarde ("Plaintiff"), on behalf of himself and all others similarly

situated, by his attorneys, Robert Wisniewski P.C., as and for his Complaint against the

Defendants, GW GJ, Inc. d/b/a the Salon Professional Academy of Buffalo ("SPA" or

"the School") and Margaret and Paul Grenauer (the "Individual Defendants")

(collectively, "the Defendants"), states as follows:

## NATURE OF THE ACTION

2.     Plaintiff brings this action on behalf of himself and on behalf of all others similarly

situated (**Exhibit 1**) to recover unpaid wages, tips and service fees, and other actual

damages as well as liquidated damages and reasonable attorneys' fees and costs under the

Fair Labor Standards Act of 1938, as amended (29 U.S.C. § 201, et seq.) ("FLSA") and

the various wage orders promulgated by the U.S. Department of Labor and codified in 29

C.F.R. § 500 et seq., New York Labor Law Articles 6 and 19, and § 198-b and §193, and

§196-d ("New York Labor Law"), and various wage orders promulgated by the New

York State Department of Labor and codified in 12 N.Y.C.R.R. §§ 137-143 as well as the

New York State common law.

3.　　Defendants operate a for-profit cosmetology school in Tonawanda, New York.  In

addition to providing instruction to their tuition-paying students on the principles of

cosmetology, hairstyling, nail care, and so forth, Defendants also offer the beauty

services of students such as Plaintiff to the public in their salon-like facilities.  Plaintiff

and the other students, however, were not paid for the work they provided, and

Defendants pocketed the fees the salon customers paid for the students' labor.

4.　　The labor the students perform for Defendants is required under the terms of the students'

enrollment agreement, which requires that the students work for Defendants a set number

of hours per week in Defendants' salon, according to a schedule set by Defendants.  In

Plaintiff's case, this amounted to 34 hours per week for 22 weeks, for a total of 748

unpaid hours of labor over the course of his enrollment.

5.　　This labor is not tailored to the students' education or long-term career goals, but

amounts to whatever the customers demand, or indeed whatever other manual or clerical

labor needs to be done around the salon.

6.　　Defendants' failure to pay Plaintiff and others similarly situated at least a minimum wage

constitutes a willful violation of the FLSA and applicable state laws, as discussed in

detail below.

## PARTIES, JURISDICTION AND VENUE

7.  At all relevant times herein, Plaintiff was and still is a resident of the State of New York, Erie County.

8.  At all relevant times herein, Defendant SPA was and still is a domestic business corporation duly organized under, and existing by virtue of, the laws of the State of New York, and presently having its principal place of business at 2309 Eggert Road, Tonawanda, NY 14150.

9.  At all relevant times herein, SPA transacted and still transacts substantial business and derived and still derives substantial revenue from services rendered in the State of New York.

10. At all relevant times herein, the Individual Defendants Margaret and Paul Grenauer were and are residents of the State of New York.

11. The Individual Defendants are officers, directors, managers and/or majority shareholders or owners of SPA, and as such are individually responsible for unpaid wages under the New York Business Corporation Law (**Exhibit 2**).

12. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331, in that this action arises under 29 U.S.C. § 201 et seg. (FLSA); 28 U.S.C. § 1337 (Regulation of Commerce). This Court has jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367, because those claims are related to Plaintiff's federal claims and form part of the same case or controversy.

13. Defendants engage in an enterprise whose annual volume of sales made or business done is not less than $500,000, the activities of which affect interstate commerce in that the

employees of said Defendants produce, sell, or otherwise work on goods that have been moved in or produced for interstate commerce, and Defendants are thus employers subject to the jurisdiction of the FLSA.

14.     This Court has personal jurisdiction over the Individual Defendants in that the Individual Defendants are citizens and residents of the State of New York or have continuous contacts with the State of New York.

15.     This Court is a proper venue for this action, pursuant to, among other grounds, 28 U.S.C. § 1391(b) because the events giving rise to Plaintiffs' claims occurred in this district, and because Defendants may be found within this district.

## JURY DEMAND

16.     Plaintiffs demand a trial by jury of all issues so triable in this action.

## FACTUAL BACKGROUND

17.     SPA is a for-profit business, and as such is not registered with, or recognized by, any State or the United States as a non-profit or charitable enterprise.

18.     Defendant's for-profit activities include providing educational services (the "educational services business") to tuition-paying students in the cosmetological trades, which includes training students to practice, as regulated by various state laws, the trades of barbering, skin care, makeup artistry, manicure and pedicure services, and so forth.  The revenue for the educational services business comes from the students, who pay for tuition, books, kits, and other fees.  These fees are not insubstantial – for enrollment, tuition, books, kit, and so forth (for a program that lasts 3 10-week quarters), Plaintiff paid Defendants $12,823.

19.   In addition to the educational services business, the Defendants' for-profit activities also include the providing of personal services, for a fee, to members of the public (the "personal services business"), who in exchange for paying such fees receive services including barbering and hair styling, skin and body treatments, manicure and pedicure services, and so forth.  These services are provided at prices that exceed the value of the materials, if any, that customers consume during the receipt of such services.

20.   The Defendants utilize the labor of the class members, who have also purchased the educational services provided by the Defendants, in the Defendants' personal services business.  The labor required for these services is provided predominantly by the class members.

21.   The class members are paid no wage compensation by the Defendants for the labor they provide in the Defendants' personal services business.

22.   Defendants allowed class members to accept cash tips, but such tips were *de minimis* – in Plaintiff's case, such tips amounted to $4-5 per week.  However, on information and belief, Defendants received substantial tips or other service fees from clients, which they unlawfully kept for themselves.

23.   The labor provided by the class members is necessary for the continued operation of the personal services business, and without the class members' labor the Defendants would have to secure labor from other persons who would have to be compensated at a rate at or above the minimum hourly wage required by the FLSA and applicable state laws.

24.   The Defendants actively promote their personal services business to the public, advertising the high quality of services provided by the students, and offering lower

prices than competing businesses that do not rely upon uncompensated labor to provide

such services.

25.     For example, Defendants advertise on their website for customers to come in "for

innovative beauty services at discounted prices.  Our professionally trained students will

provide you with quality services while under the watchful eye of our industry

experienced educators.  And our leading-edge facilities are designed to offer a real-world

salon feel so you won't even know you're in a school."[1]

26.     Furthermore, Defendants' advertising clearly demonstrates that Defendants understand

the value of the labor the class members provide.  In addition to describing such services

as "quality" and "innovative," Defendants note that the prices advertised on their website

are "Starting Prices" for the services provided, and that the prices customers actually pay

"will vary according to student level."

27.     Defendants are thus able to be profitable and compete advantageously with other for-

profit businesses in the personal services market despite charging customers lower prices

than their competitors for comparable services.  Defendants' ability to do so is either

substantially or entirely the result of Defendants enjoying lower operating costs in their

personal services business than their competitors due to using the class members' unpaid

labor, while their competitors must pay their employees wages at or above the minimum

hourly wage.

28.     There is no reason why Defendants could not have the class members provide personal

_____

[1]*See* Salon Professional Academy Website, "Guest Services" tab, available at
http://www.tspabuffalo.com/guestservices.html (last accessed August 19, 2014).

services to the public without charge, or at a price representing the actual cost, if any, of the materials consumed in providing such personal services. However, despite already earning revenue from their educational services business, Defendants also chose to maximize the profit-making potential of their personal services business by charging prices above their materials costs – and indeed, charge higher prices for the services of more advanced students. This is revenue Defendants reap as profit wholly unfettered by any costs of labor from the class members who are actually providing the services.

29.     While the class members do gain experience from the unpaid labor they provide for Defendants' personal services business, Defendants' decision to run their personal services business as a profit-making venture is irrelevant to the class members' education and occupational goals. The class members would enjoy the same benefit of knowledge and experience if Defendants did not charge customers (or charged only a nominal fee) for their personal services business – in fact, the class members would likely gain much *more* knowledge and experience under such a scenario, as the public's demand for their services – and thus the class members' opportunity to gain experience – would be greater if the prices were substantially lower.

30.     Similarly, Defendants' educational services business neither requires nor benefits from the Defendants' decision to maximize the personal services business's profit-making potential by profiting off of the unpaid labor of the class members. As noted *supra*, the tuition and fees Defendants charge the students is substantial – in excess of $12,000 for 3 10-week terms.

31.     The amount of hours of unpaid labor that the class members performed in Defendants'

personal services business is known to the Defendants.  Plaintiff's unpaid work for

Defendants amounted to 748 hours.

***Facts Relating To The Creation And Existence Of An Employment Relationship
Between Defendants And The Class Members***

32.     The relationship between Defendants and the class members, in respect to the unpaid

labor provided by the class members in Defendants' personal services business, is one of

employer and employee for the purposes of the FLSA and state law.

33.     The class members provided labor in Defendants' personal services business that was

immediately advantageous to Defendants, and the profitability of the business was

substantially or wholly dependent upon their labor.  This labor made unnecessary the

employment of workers Defendants would have otherwise had to employ (and pay wages

to) for the performance of the labor that the class members furnished and from which the

Defendants profited.

34.     Defendants directed class members' duties and working hours, set their daily and weekly

schedules, set rules for their work performance (including termination for absenteeism or

insubordination), controlled the class members' working conditions, and otherwise

performed the traditional role of employers.

35.     The class members, while receiving a benefit from their labor in the form of experience,

were simultaneously conferring a valuable economic benefit upon Defendants, which

were charging the public for the services of the class members and profiting from such

charges.  As noted *supra*, Defendants were well aware of the value of the class members'

labor, even charging higher prices for the services of the more advanced students.

36.     Furthermore, not all of the class members' labor provided educational benefit.  Class

members were frequently required to perform manual labor or administrative functions (janitorial and clerical work, etc.) that provided no educational benefit to the class members, but again provided a valuable service to the Defendants for which they would otherwise have to hire (and pay) other workers.

37.   The labor the class members provided was not organized or structured for educational purposes, but was wholly or predominantly based upon the economic demands of the consuming market.  This subservience of the class members' interests in receiving occupational experience and training in the cosmetology trades to the Defendants' objective of selling the class members' labor for a profit in the Defendants' personal services business was manifested in a variety of policies that the Defendants imposed upon the class members, including, upon information and belief, some or all of the following:

a.      Requiring class members to obtain live models upon which to perform services for credit as part of the class members' educational program, but also requiring such live models pay the Defendants, at Defendants' prices, for the cosmetological services rendered by the class members;

b.      Requiring or encouraging class members to sell Defendants' products to customers, or to try to sell other services to customers;

c.      Requiring class members to perform whatever cosmetological service was demanded by a customer and for which the customer would pay the Defendants a fee, as opposed to letting the class members choose what services they wanted or needed additional training in; i.e., if a class member wished to become a

hairdresser full time, and wanted more practice styling hair or simply to earn

more hours towards being a licensed hairdresser, but the customers coming in

wanted manicures, that class member would be spending their time giving

manicures rather than gaining knowledge and experience in their chosen field of

study.

38.    As such, Defendants' use of the class members' unpaid labor in a commercial, for-profit

business, where Defendants retained the power to control the class members' work

schedule and tasks, as well as the power to terminate the employment of the class

members, and where the educational benefits of such labor were subservient to

Defendants' commercial needs, created and maintained an employer-employee

relationship for the purposes of the FLSA and applicable state laws.

***Facts Relating To The Defendants' Status As Joint Employers***

39.    The Individual Defendants Paul and Margaret Grenauer are officers, directors, owners, or

otherwise in control of the business affairs of SPA.  As such, the Individual Defendants

had final control over the class members working at SPA, as well as final control over the

rules, policies, and working conditions of SPA, on their own and through the managers

and supervisors they employed who directly managed and supervised the class members.

40.    At all relevant times herein, the Individual Defendants conducted business as SPA in

their capacity as owners and officers, and had operational control over SPA.

41.    At all relevant times herein, the Individual Defendants acted for and on behalf of SPA,

with the power and authority vested in them as officers, agents, and employees of SPA,

and acted in the course and scope of their duty and function as officers, agents, and

employees of SPA.

42. The Individual Defendants had control over the conditions of Plaintiff's and the other class members' work schedules and records, daily duties, and continued enrollment (and subsequent employment and exploitation by) SPA.

43. As a matter of economic reality, all Defendants are joint employers of Plaintiff and others similarly situated; and, as a result, all Defendants, individually and collectively, and jointly and severally, are liable for all claims made herein.

### *Defendants Willfully Violated Federal And New York State Labor Laws And Wage Orders Promulgated Thereunder*

44. The Individual Defendants have willfully or intentionally acted to violate the laws, rules, regulations, statutes, and wage orders alleged herein, and by doing so and by virtue of their positions as controlling owners, shareholders, directors, officers and/or managers of SPA, have assumed personal liability for the claims of the Plaintiff and others similarly situated herein.

45. At all relevant times herein, the Individual Defendants were aware that they were utilizing and profiting from the unpaid labor of the class members in their personal services business, in violation of the minimum wage requirements of the FLSA and applicable state laws.

46. Plaintiff and other students complained to Defendants about not being paid, and told Defendants that they (the students) were never told that, as part of their enrollment in the School, they would be forced to work without pay in the School's salon.

47. At the very least, the Defendants failed to ascertain their obligations under both federal and state laws as employers with respect to the class members.

48.     As such, the various violations of the law which are alleged herein were committed
intentionally and/or willfully by the Defendants.

*The Violations Are Continuing*

49.     All of the violations of various federal and state laws and regulations set forth herein
have continued after Plaintiff left Defendants' employ and have continued to date.

## CLASS ALLEGATIONS UNDER FEDERAL RULES OF
## CIVIL PROCEDURE 23(b)(2) AND 23(b)(3) FOR VIOLATIONS OF
## NEW YORK LABOR LAW AND WAGE ORDERS

50.     Plaintiff brings this action on behalf of himself and all other persons who performed or
are performing uncompensated labor for the Defendants in their personal services
business in violation of the New York Labor Law and the state wage orders codified in12
N.Y.C.R.R. §§ 137-146.

51.     Upon information and belief, this class of persons is so numerous that joinder of all
members is impracticable under the standards of Fed. R. Civ. P. 23 (a)(1).

52.     There is a well-defined community of interest in the questions of law and fact affecting
the class the Plaintiff proposes to represent.  The class members' claims against the
Defendants involve questions of common or general interest, in that their claims are
based on Defendants' failure to pay any wages whatsoever to such persons for their labor
in Defendants' personal services business.  These questions are such that proof of a state
of facts common to the members of the class will entitle each member of the class to the
relief requested in this Complaint.

53.     Plaintiff's claims are typical of the claims of the above-described class in that all of the
members of the class have been similarly affected by the acts, policies, and practices of

the Defendants.  Furthermore, Plaintiff will fairly and adequately protect the interests of the members of the class, in that his interests are not adverse to the interests of the other members of the class.

54. A class action is superior to other available methods for the fair and efficient adjudication of the controversy under the standards of Fed. R. Civ. P. 23 (b)(3).

55. Plaintiff brings the second and third claims for relief herein on behalf of himself and all persons similarly situated as a class action pursuant to Federal Rule of Civil Procedure 23, in respect to all claims that Plaintiff and all persons similarly situated have against the Defendants as a result of Defendants' violations of the New York Labor Law, the common law of the State of New York, and the state wage orders codified in 12 N.Y.C.R.R. §§ 137-146.

## COLLECTIVE ACTION ALLEGATIONS

56. Plaintiff brings this action on behalf of himself and all other persons who performed or are performing uncompensated labor for the Defendants in their personal services business in violation of the FLSA and the federal wage orders codified in 29 C.F.R. § 500 et seq.

57. Upon information and belief, this class of persons consists of not less than forty (40) persons.

58. There are questions of law and fact common to the class, specifically whether the employment of Plaintiff by the Defendants is subject to the jurisdiction and the wage and overtime requirements of the FLSA and the federal wage orders codified in 29 C.F.R. § 500 et seq. Only the amount of individual damages sustained by each former or current

Exhibit 1

Exhibit 2

**NOTICE OF INTENTION TO ENFORCE SHAREHOLDER LIABILITY FOR**
**SERVICES RENDERED**

TO:   MARGARET GRENAUER,
       PAUL GRENAUER

       PLEASE TAKE NOTICE, that pursuant to the provisions of Section 630 of the Business
Corporation Law of New York, you are hereby notified that PATRICK VELARDE, on behalf of
himself and on behalf of all others similarly situated, intends to charge you and hold you
personally liable, jointly and severally, as one of the ten largest shareholders of GW GJ, Inc.,
d/b/a THE SALON PROFESSIONAL ACADEMY OF BUFFALO for all debts, wages and/or
salaries due and owing to them as laborers, servants and/or employees of the said corporations
for services performed by them for the said corporations within the six (6) years preceding the
date of this notice and have expressly authorized the undersigned, as their attorney, to make this
demand on their behalf.

       Dated: New York, New York
              August 22, 2014

                                          ROBERT WISNIEWSKI P.C.

                                          By: _____
                                              Robert Wisniewski (RW-5308)
                                          Attorneys for Plaintiffs
                                          225 Broadway, Suite 1020
                                          New York, New York  10007
                                          (212) 267-2101