**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

─────────────────────────────

**PATRICK VELARDE, on behalf of himself**
**and all others similarly situated,**

                              **Plaintiff,**

**v.**
                                                        **14-CV-695S(Sr)**

**GW GJ, INC., d/b/a THE SALON**
**PROFESSIONAL ACADEMY OF BUFFALO,**

**MARGARET GRENAUER, and**

**PAUL GRENAUER,**

                              **Defendants.**

─────────────────────────────

## REPORT, RECOMMENDATION & ORDER

        This case was referred to the undersigned by the Hon. William M.

Skretny, in accordance with 28 U.S.C. § 636(b)(1), for all pretrial matters and to hear

and report upon dispositive motions.  Dkt. ##15 & 34.


        Plaintiff commenced this action pursuant to the Fair Labor Standards Act

("FLSA"), 29 U.S.C. § 201 *et seq.*, and the New York Labor Laws ("NYLL"), seeking

compensation for the hours he was assigned to work in the salon during the course of

his enrollment at The Salon Professional Academy of Buffalo ("Academy"), a for-profit

cosmetology school owned by Paul and Margaret Grenauer.  Dkt. #1.

Currently before the Court is defendants' motion for judgment on the pleadings. Dkt. #31.  For the following reasons, it is recommended that defendants' motion be granted.

## FACTUAL BACKGROUND

Plaintiff's amended complaint alleges that he paid the Academy $12,823.00 in tuition and fees to learn the cosmetological trades.  Dkt. #6, ¶¶ 3 & 18. Plaintiff alleges that, in accordance with the terms of the students' enrollment agreement, students are required to work in the Academy's salon according to a schedule set by the Academy.  Dkt. #6, ¶ 4.  Plaintiff alleges that he worked in the salon 34 hours per week for 22 weeks, a total of 748 hours of unpaid labor.  Dkt. #6, ¶ 4. Plaintiff alleges that he was never told that, as part of his enrollment in the Academy, he would be forced to work without pay in the salon.  Dkt. #6, ¶ 46.

The Day Cosmetology Enrollment Agreement ("Agreement"), signed by plaintiff on April 1, 2011, provides that the Academy would furnish plaintiff with an education in all phases of Cosmetology as required by the State of New York and in accordance with the Education Law and Commissioner's Regulations.  Dkt. #31-6, p.2. The Agreement provides that the Cosmetology Day Course requires 1000 hours of training as specified by the State of New York.  Dkt. #31-6, p.2.  The Agreement specifies that plaintiff would follow the Fundamentals Schedule of Monday through Thursday, 9-5 and Friday, 9-4 for the first eight weeks and then follow Schedule D for the remainder of their course of study: Monday, Wednesday and Thursday, 9-5;

-2-

Tuesday, 1-9; and alternating Friday, 9-4 one week and Saturday, 9-4 the next week. Dkt. #31-6, p.2.  The Agreement specified that plaintiff's classes would begin on April 18, 2011 with an expected completion date of November 19, 2011.  Dkt. #31-6, p.34. The Agreement specifies that graduation from the Academy was dependent upon completion of state required 1000 hours, as well as completion of all assignments and tests with a minimum 85% attendance and grade average and payment of all financial obligations to the Academy.  Dkt. #31-6, p.5. The Agreement incorporated by reference all conditions and provisions contained in the Academy Catalog, a copy of which plaintiff acknowledged receiving.  Dkt. #31-6, p.5.


          The Academy Catalog states that students' classroom and salon area schedules are pre-determined and defined in the students' enrollment agreement. Dkt. #31-7, p.6.  The Academy Catalog notes that licensing for cosmetology in the state of New York requires completion of 1000 hours of approved training; graduation from a state approved school and a passing grade on state board licensing exams.  Dkt. #31-7, p.14. The Academy Catalog states that students are expected to complete all state approved training within 1176 scheduled hours.  Dkt. #31-7, pp. 11 & 16.  The Academy Catalog lists the following objectives for the Cosmetology program:


> The Academy offers a 1000 hour training program in the cosmetology arts and sciences that meet New York State standards.  The Salon Professional Academy's objective for the cosmetology program includes theory and practical teaching that prepares the student to perform hair, skin and nail services on the general public, the background/skills need[ed] to pass the state licensing exam and the business skills of today's industry.

Dkt. #31-7, p.20.  The Academy Catalog notes that its facility has spacious hair care, nail care, and skin care educational areas, as well as classrooms, a student lounge and offices.  Dkt. #31-7, p.3.

Plaintiff alleges that the Academy actively promotes the salon to the public, advertising the high quality of services provided by the students and offering lower prices than competing businesses that do not rely upon uncompensated labor to provide such services.  Dkt. #6, ¶ 24.  For example, plaintiff alleges that the Academy's website advertises for customers to come in to the salon

> for innovative beauty services at discounted prices.  Our professionally trained students will provide you with quality services while under the watchful eye of our industry experienced educators.  And our leading-edge facilities are designed to offer a real-world salon feel so you won't even know you're in a school.

Dkt. #6, ¶ 25.  The advertisement included "Starting Prices" for the services provided, noting that actual pricing "will vary according to student level."  Dkt. #6, ¶ 26.

Plaintiff alleges that the Academy is "able to be profitable and compete advantageously with other for-profit businesses in the personal services market despite charging customers lower prices than their competitors for comparable services" because of "lower operating costs" due to the Academy's use of "unpaid labor."  Dkt. #6, ¶ 27.  Plaintiff complains that "despite already earning revenue from their educational services business, the Academy has also chosen

> to maximize the profit-making potential of their personal services business by charging prices above their material costs - and indeed, charge higher prices for the services of

> more advanced students.  This is revenue Defendants reap
> as profit wholly unfettered by any costs of labor from the
> class members who are actually providing the services.

Dkt. #6, ¶ 28.  While acknowledging that students "gain experience from the unpaid

labor they provide" to the salon, plaintiff argues that the students would gain more

knowledge and experience if the Academy charged nothing or a nominal fee because

the demand for services, and thus the students' opportunity to gain experience, would

be greater if prices were lower.  Dkt. #6, ¶ 29.

Plaintiff specifically challenges the Academy's policies of: (a) requiring

students to obtain individuals upon which to perform services for credit as part of

students' educational program, but requiring such individuals to pay for the services

provided; (b) requiring students to sell products or other services to customers; and (C)

requiring students to perform whatever services customers requested rather than

allowing students to choose the services they wished to perform.  Dkt. #6, ¶ 37.

Plaintiff also alleges that the labor students are required to provide "is not tailored to the

students' education or long-term career goals, but amounts to whatever the customers

demand, or indeed whatever other manual or clerical labor needs to be done around

the salon."  Dkt. #6, ¶ 5.

Plaintiff alleges that the Academy's reliance upon students' unpaid labor

in their commercial, for-profit business, where the Academy controlled the students'

work schedule and tasks and retained the power to  terminate students, created an

employer-employee relationship for purposes of the Fair Labor Standards Act and

applicable state laws.  Dkt. #6, ¶ 38.  Plaintiff also seeks payment for services at a rate

which constitutes the reasonable value of his services under a theory of quantum

meruit.  Dkt. #6, ¶¶ 66-71.


## DISCUSSION AND ANALYSIS

### Dismissal Standard

A motion for judgment on the pleadings pursuant to Rule 12(c) of the

Federal Rules of Civil Procedure employs the same standard as a motion to dismiss

pursuant Rule 12(b)(6).  *Bank of New York v. First Millennium, Inc.*, 607 F.3d 905, 922

(2d Cir. 2010). To survive such a motion, "a complaint must contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), *quoting Bell Atlantic Corp. v. Twombly*, 550

U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  Conclusory allegations or

legal conclusions masquerading as factual conclusions are insufficient.  *Rolon v.*

*Henneman*, 517 F.3d 140, 149 (2d Cir. 2008).  Application of this standard is "a context-

specific task that requires the reviewing court to draw on its judicial experience and

common sense."  *Id.* at 679.


### Evidentiary Standard

"In adjudicating a Rule 12(b)(6) motion, a district court must confine its

consideration "to facts stated on the face of the complaint or incorporated in the

complaint by reference, and to matters of which judicial notice may be taken." *Leonard*

*F. v. Israel Discount Bank of New York*, 199 F.3d 99, 107 (2d Cir. 1999); *see also*

*Kramer v. Time Warner, Inc.*, 937 F.2d 767, 773 (2d Cir. 1991). "Where a plaintiff has

relied on the terms and effect of a document in drafting the complaint and that

document is thus integral to the complaint," the district court may consider the contents

of the document "even if it is not formally incorporated by reference." *Broder v.*

*Cablevision Systems Corp.*, 418 F.3d 187, 196 (2d Cir. 2005) (internal quotations

omitted), *quoting Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002). "If

the documents referenced in the complaint contradict the facts alleged by the plaintiff,

the documents control and the court need not accept as true the plaintiff's allegations."

*Olin Corp. v. E.I. Dupont De Nemours and Corp.*, No. 05-CV-100S(Sc), 2006 WL

839415 (W.D.N.Y. March 27, 2006).

        Plaintiff requests that the Court take judicial notice of the Academy's

location

> in the middle of a shopping mall next to a Savers store and
> surrounded by other stores, with a massive parking lot in the
> front. This shopping mall is situated at the intersection of
> two major thoroughfares and is in between two large
> residential communities, which no doubt serve as a pool of
> clients to Defendants' beauty salon which merely
> masquerades as a cosmetology school.

Dkt. #37, ¶ 4. However, plaintiff argues that the Court should not consider exhibits

proffered by the Academy without converting the motion from a motion for judgment on

the pleadings to a motion for summary judgment. Dkt. #38, p.3. Specifically, plaintiff

objects to the Court's consideration of a diploma issued to plaintiff; the Agreement; and the Academy Catalog.  Dkt. #38, p.5.  Plaintiff asserts that defendants fail to "provide any scintilla of proof that such documents were in plaintiffs' possession when the complaint was drafted or of which Plaintiff 'had knowledge and relied on in bringing suit.'"  Dkt. #38, p.5, *quoting Chambers*, 282 F.3d at 152-53.

The Academy responds that the Agreement, Academy Catalog and diploma are properly before the Court.  Dkt. #42, p.3.  Specifically, the Academy argues that the Agreement was specifically mentioned in plaintiff's complaint and the Academy Catalog was incorporated by reference into the enrollment agreement.  Dkt. #42, p.4. In any event, the Academy argues that these documents are integral to the allegations of plaintiff's complaint because they governed plaintiff's participation in the salon.  Dkt. #42, p.4.

The Agreement and Academy Catalog are properly before the Court for consideration of defendants' motion for judgment on the pleadings by virtue of their incorporation by reference into the complaint.  The amended complaint specifically alleges that "[t]he labor the students perform for Defendants is required under the terms of the students' enrollment agreement" (Dkt. #6, ¶ 4), and the Agreement specifically incorporates by reference all conditions and provisions contained in the Academy Catalog.  Dkt. #31-6, p.5.  Plaintiff signed the Agreement, which acknowledges plaintiff's receipt of, *inter alia*, the Academy Catalog.  Dkt. #31-6, p.5.  Accordingly, the Court will consider these documents in its analysis of the merits of defendants' motion.

The Court finds the remainder of defendants' proffered exhibits immaterial to resolution of the motion for judgment on the pleadings.  With respect to plaintiff's allegations regarding the location of the Academy's salon, the Court will proceed as though these allegations were included within the factual allegations of plaintiff's amended complaint.

**Employment Relationship**

The Academy argues that plaintiff's amended complaint fails to plausibly allege that he was an employee pursuant to the FLSA or the NYLL.  Dkt. #31-13, p.11. More specifically, the Academy argues that plaintiff's amended complaint fails to allege sufficient facts to demonstrate anything other than plaintiff's enrollment in a *bona fide* clinical training program in which plaintiff was the primary beneficiary.  Dkt. #31-13, pp.14-16.  The Academy argues that even crediting plaintiff's assertion that it profited from the salon, that is insufficient to alter the nature of the relationship between plaintiff and the Academy.  Dkt. #31-13, pp.16-17.

Plaintiff argues that the Court cannot determine the existence of an employment relationship without affording plaintiff the opportunity for discovery.  Dkt. #38, pp.3 & 6.  Plaintiff further argues that his amended complaint plausibly alleges that he was an employee of defendants' "for profit beauty enterprise which masquerades as a cosmetology school because the Defendants' business model of offering cheap beauty services to the fee-paying public in a high traffic area depends on the unpaid work of its students and allows Defendants to reap substantial profits while conferring

dubious benefits on the students." Dkt. #38, p.3. More specifically, plaintiff argues that his amended complaint

> alleges facts that if true show that Defendants operate a beauty salon which masquerades as a cosmetology school, and that the primary goal of Defendants' business is to obtain substantial profit from the direct beauty and cosmetology services provided by Plaintiff and other students to the fee-paying public. Defendants' business model centers on the provision of below-market beauty and cosmetology services to the fee-paying public because it is undergirded by an unending stream of students who not only [do] not receive any pay for their work but also subsidize Defendants' business with tuition which in Plaintiff's case amounted to $12,823.00. While Defendants are indeed licensed by the New York Department of Labor to issue cosmetology degrees, the academic side of their business takes a second seat to their primary goal - which is to derive substantial profit by using the students' unpaid work and thus gain an economic advantage over other similar businesses.

Dkt. #38, pp.11-12.


The Academy replies that *Glatt v. Fox Searchlight Pictures, Inc.*, 811 F.3d 528 (2nd Cir. 2016), clarified that the proper test focuses on who was the primary beneficiary of the relationship between the Academy and the plaintiff. Dkt. #42, p.5. Pursuant to that test, the Academy argues that so long as the student received the benefit of the education promised, it is irrelevant whether the Academy also profited from the relationship. Dkt. #42, p.5. The Academy argues that plaintiff does not allege that plaintiff did not receive the educational benefit of academic credit towards the 1,000 hours of instruction required to apply for a cosmetology license or the clinical experience needed to pass the practical component of New York's licensing exam. Dkt. #42, p.6.

Subject to exceptions that are not pertinent to this case, "the FLSA requires employers to pay all employees a specified minimum wage, and overtime of time and one-half for hours worked in excess of forty hours per week." *Glatt*, 811 F.3d at 533, *citing* 29 U.S.C. §§ 206-07. "NYLL requires the same, except that it specifies a higher wage than the federal minimum." *Id.* at 533-34, *citing* New York Labor Law § 652. Both statutes apply solely to an employee, defined as an "individual employed by an employer," 29 U.S.C. § 203(e)(1), and "any individual employed, suffered or permitted to work by an employer." 12 N.Y.C.R.R. § 142-2.14(a). Given the similarity of these definitions, courts "construe the NYLL definition as the same in substance as the definition in the FLSA." *Glatt*, 811 F.3d at 534.

In *Glatt*, the Court of Appeals for the Second Circuit was asked to address the question of whether an unpaid intern was entitled to compensation as an employee under the FLSA. 811 F.3d at 535. The Court of Appeals clarified that "the proper question is whether the intern or the employer is the primary beneficiary of the relationship." *Id.* at 536. "Under that test, 'an employment relationship is not created when the tangible and intangible benefits provided to the intern are greater than the intern's contribution to the employer's operation.'" *Wang v. Hearst Corp.*, __ F. Supp.3d __, 2016 WL 4468250, at *4 (S.D.N.Y. Aug. 24, 2016), *quoting Glatt*, 811 F.3d at 536. More specifically, the primary beneficiary test focuses on: (1) what the intern receives in exchange for his work; (2) the economic reality between the intern and the employer; and (3) whether the intern enters into the relationship with the expectation of receiving educational or vocational benefits that are not necessarily expected with all

forms of employment." *Id.; See Glatt,* 811 F.3d at 536.  The Court of Appeals identified

"a non-exhaustive set of considerations" to guide this inquiry, including:

> 1. The extent to which the intern and the employer clearly understand that there is no expectation of compensation.  Any promise of compensation, express or implied, suggests that the intern is an employee - and vice versa.
>
> 2. The extent to which the internship provides training that would be similar to that which would be given in an educational environment, including the clinical and other hands-on training provided by educational institutions.
>
> 3. The extent to which the internship is tied to the intern's formal education program by integrated course work or the receipt of academic credit.
>
> 4. The extent to which the internship accommodates the intern's academic commitments by corresponding to the academic calendar.
>
> 5. The extent to which the internship's duration is limited to the period in which the internship provides the intern with beneficial learning.
>
> 6. The extent to which the intern's work complements, rather than displaces, the work of paid employees while providing significant educational benefits to the intern.
>
> 7. The extent to which the intern and the employer understand that the internship is conducted without entitlement to a paid job at the conclusion of the internship.

*Id.* at 536-37.  The Court of Appeals instructed that application of these considerations

> requires weighing and balancing all of the circumstances. No one factor is dispositive and every factor need not point in the same direction for the court to conclude that the intern is not an employee entitled to the minimum wage.

*Id.* at 537.  Although "the existence and degree of each factor is a question of fact . . . whether workers are employees or interns is a question of law."  *Wang*, 2016 WL 4468250, at *5, *quoting Mark v. Gawker Media LLC*, No. 13-CV-4347, 2016 WL 1271064, at *8 (S.D.N.Y. Mar. 29, 2016).

Plaintiff does not allege any expectation of compensation for the hours spent in the Academy's salon.  In fact, plaintiff very carefully avoided any such allegation by pleading the converse of such an expectation: "Plaintiff . . . complained to Defendants about not being paid, and told Defendants that they (the students) were never told that, as part of their enrollment in the [Academy], they would be forced to work without pay in the [Academy's] salon."  Dkt. #6, ¶ 46.  Moreover, the Academy Catalog informed plaintiff that its "cosmetology program includes theory and practical teaching that prepares the student to perform hair, skin and nail services on the general public" and touted its "spacious hair care, nail care, and skin care educational areas, as well as classrooms, a student lounge and offices."  Dkt. #31-7, p.3.

New York regulations provide the educational requirements for cosmetologists, including specific subjects and a set number of hours assigned to each subject.  19 N.Y.C.R.R. 162.4.  For example, students must complete 245 hours of instruction on the topic of hair styling, including fingerwaving, pincurling, skipwaving, roller styling, blowdrying, thermal curling, hair pieces, *etc*.  19 N.Y.C.R.R. 162.4. To complete the curriculum for cosmetology, students must complete a total of 1,000 hours. 19 N.Y.C.R.R. 162.4. The Agreement informed plaintiff that the program in which

he was enrolling "is a required training period of 1000 hours as specified by the State of New York, and as determined by the School." Dkt. #31-6, p.2. The Academy Catalog reiterates that licensing for cosmetology in the state of New York requires completion of 1000 hours of approved training and sets the expectation that students will complete their state approved training within 1176 scheduled hours. Dkt. #31-7, pp.11 & 14-15. Plaintiff does not allege that he was required to complete more than the hours than required by the New York State standards or set forth in the Agreement, nor does he allege that the hours he completed were inadequate to prepare him for the state licensing exam. To the contrary, plaintiff concedes that students "gain experience from the unpaid labor they provide" to the salon. Dkt. #6, ¶ 29. Moreover, plaintiff does not allege that he, or any other student, continued at the salon following completion of the educational program or that the salon provided services independently of those provided by the students as part of their educational program.

The gravamen of plaintiff's amended complaint is not the quality of the educational program, but the perception that, notwithstanding plaintiff's recognition that the Academy is "a for-profit cosmetology school," (Dkt. #6, ¶¶ 3 & 17), the Academy was profiting from his educational experience. As recognized by the Eleventh Circuit while adopting the primary beneficiary test set forth in *Glatt*, however, "there is nothing inherently wrong with an employer's benefitting from an internship that also plainly benefits the interns." *Schumann v. Collier Anesthesia, P.A.*, 803 F.3d 1199, 1211 (11th Cir. 2015). In other words, so long as

> the relationship at issue has the qualities of a bona fide
> internship, providing educational or vocational benefits in a

> real-world setting, the intern can be the primary beneficiary
> of the relationship even if her activities provide direct benefit
> to the employer.  However, the court must "recognize the
> potential for some employers to maximize their benefits at
> the unfair expense and abuse of student interns."  If the
> "economic reality" of the relationship is that the intern is
> providing free labor to the employer without receiving
> significant educational or vocational benefits in return, then
> the outward trappings of an internship will not prevent the
> court from determining that the intern is an employee.

*Mark*, 2016 WL 1271064, at * 8, *quoting Schumann*, 803 F.3d at 1211.  Because "'[t]he

purpose of a bona-fide internship is to integrate classroom learning with practical skill

development in a real-world setting,' . . .  an intern in a bona-fide internship is not an

employee."  *Id., quoting Glatt*, 811 F.3d at 537.  More specifically, the fact that a

cosmetology school "earns some revenue from its providing that clinical experience

does not change the fundamental nature of the program." *Hollins v. Regency Corp*.,

144 F. Supp.3d 990, 1004 (N.D. Ill. 2015).  Therefore, plaintiff's allegations that the

salon profited from the services provided by its students are insufficient to remove this

case from the auspices of a *bona fide* educational experience as mandated by New

York regulations.


In support of his argument, plaintiff relies upon *Winfield v. Babylon Beauty*

*School of Smithtown*, 89 F. Supp.3d 556 (E.D.N.Y. 2015), and *Guy v. Casal Institute of*

*Nevada*, No. 2:13-CV-02263, 2014 WL 1899006 (D. Nev. May 12, 2014).  However,

*Winfield* was decided before the Court of Appeals for the Second Circuit adopted the

primary beneficiary test in *Glatt* and therefore focused upon the economic reality of the

parties relationship, finding dispositive plaintiffs' allegations that the beauty school

earned a substantial profit from the beauty school clinic.  89 F. Supp.3d at 567; *but see Jochim v. Jean Madeline Educ. Ctr, of Cosmetology*, 98 F. Supp.3d 750, 759 (E.D.Pa. 2015) (Even assuming that cosmetology clinic was profitable, that factor alone does not suffice to transform the economic reality of the relationship between cosmetology school and student into one qualifying as employee/employer under the FLSA).  In addition, *Winfield* relied upon *Marshall v. Baptist Hospital, Inc.*, which utilized an economic reality test and determined that the clinical training portion of the program was not a *bona fide* educational program because students were not adequately supervised and quickly became working members of the hospital's X-ray department, thereby displacing regular employees under circumstances in which the hospital received more benefit from the arrangement than the students.  473 F. Supp. 465, 476-77 (M.D. Tenn. 1979), *rev'd on other grounds by* 668 F.2d 234 (6th Cir. 1981).  Those are not the facts alleged in the instant case.

*Guy* was also decided using the economic reality test rather than *Glatt's* primary beneficiary test. 2016 WL 4479537, at *3.  In fact, the *Guy* court specifically rejected defendant's argument that plaintiff "enrolled in the school as a student with no express expectation of payment or future employment," noting that "was not the appropriate test to determine whether an individual is an employee."  *Id.* at 5.  Instead, the court found that "the appropriate inquiry is an analysis of the overall 'economic reality' of the relationship and the prioritization of the business interests versus the student's educational interests."  *Id.*  In that case, the district court determined that the cosmetology school "subordinated the interests of its students' education to its own

interest in providing services to paying customers," because the school "required that students regularly engage in janitorial and menial tasks;" failed to provide significant or oversight of students by supervisors; and refused to allow students to solicit unpaid volunteers upon which students could practice their skills, requiring that students train upon paying customers. *Id.* at 5. Although plaintiff in the instant case does allege that he was required to perform some manual or clerical labor, and to obtain volunteers who were required to pay for services, these allegations are insufficient, upon consideration of the totality of circumstances set forth in the amended complaint, to plausibly allege that plaintiff was not the primary beneficiary of the relationship between the two parties. In other words, the totality of the circumstances alleged by plaintiff fail to plausibly allege that plaintiff was not the primary beneficiary of the educational experience he contracted to receive from the Academy. As a result, it is recommended that defendants' motion  for judgment on the pleadings be granted with respect to his FLSA and NYLL causes of action.


**Quantum Meruit**

The Academy argues that the Agreement precludes a *quantum meruit* claim.  Dkt. #31-13, p.22.  The Academy also argues that plaintiff's amended complaint fails to allege any reasonable expectation of compensation and that plaintiff has failed to allege the reasonable value of his services.  Dkt. #31-13, p.23.


Plaintiff responds that he has sufficiently alleged each of the elements of a *quantum meruit* claim.  Dkt. #38, p.18.

-17-

"In order to recover in quantum meruit under New York law, a claimant must establish '(1) the performance of services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation therefore, and (4) the reasonable value of the services.'" *Mid-Hudson Catskill Ministry v. Fine Host Corp.*, 418 F.3d 168, 175 (2d Cir. 2005), *quoting Revson v. Cinque & Cinque, P.C.*, 221 F.3d 59, 69 (2d Cir. 2000). However, "New York law does not permit recovery in quantum meruit . . . if the parties have a valid, enforceable contract that governs the same subject matter as the quantum meruit claim." *Id.*

In the instant case, plaintiff's amended complaint fails to allege any facts to support his conclusory assertion that he "and others similarly situated had a reasonable expectation of receiving payment at an appropriate wage rate for the hours they worked for Defendants, but Defendants failed to remunerate Plaintiff accordingly." Dkt. #6, ¶ 69.  Plaintiff's allegation that he was never told that he would be forced to work without pay in the salon (Dkt. #6, ¶ 46), is insufficient to plausibly allege the converse of that statement, *to wit*, that he had any reasonable expectation that he would be paid for such work.  Moreover, nothing in the Agreement or Academy Catalog makes any mention of compensation to plaintiff for time spent in the salon.  As any expectation of compensation would be within plaintiff's knowledge, discovery should not be required before plaintiff could sufficiently plead this element of his claim. Accordingly, it is recommended that defendants' motion for judgment on the pleadings be granted with respect to plaintiff's quantum meruit cause of action.

## CONCLUSION

For the reasons set forth above, it is recommended that defendants' motion for judgment on the pleadings (Dkt. #31), be granted.

Therefore, it is hereby ORDERED pursuant to 28 U.S.C. § 636(b)(1) that:

This Report, Recommendation and Order be filed with the Clerk of the Court.

ANY OBJECTIONS to this Report, Recommendation and Order must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute, Fed.R.Civ.P. 72(b) and Local Rule 72(b).

The district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not presented to the magistrate judge in the first instance. *See, e.g., Patterson-Leitch Co. v. Massachusetts Mun. Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988).

Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." Failure to comply with the provisions of Rule 72(b) may result in the District Judge's refusal to consider the objection.

The Clerk is hereby directed to send a copy of this Report, Recommendation and Order to the attorneys for the parties.

**SO ORDERED.**

DATED:      Buffalo, New York
            November 16, 2016

                            *s/ H. Kenneth Schroeder, Jr.*
                            **H. KENNETH SCHROEDER, JR.**
                            **United States Magistrate Judge**